F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 17 2018  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LYDIA MATSON and CHRISTINA MATSON,

                        Plaintiffs,

        -against-

MERSCORP HOLDINGS, INC and PLAZA
HOME MORTGAGE, INC,

                       Defendants.
-----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
17-CV-4224 (JMA)(AKT)

**APPEARANCES:**

    Lydia Matson
    Christina Matson
        *Pro Se Plaintiffs*

    Rachel G. Packer
    Alfred W.J. Marks
    DAY PITNEY LLP
    7 Times Square
    New York, New York 10036
        *Attorneys for Defendants*

**AZRACK, United States District Judge:**

On July 17, 2017, *pro se* plaintiffs Lydia Matson and Christina Matson (collectively, "Plaintiffs") commenced this action against MERSCORP Holdings, Inc. ("MERSCORP") and Plaza Home Mortgage, Inc. ("PHM") (collectively, "Defendants"), alleging various claims in connection with a mortgage executed by Plaintiffs in January 2017.

Before the Court is Defendants' motion to dismiss the Complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (ECF No. 16.) For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

1

## I. BACKGROUND

### A. <u>Facts</u>

Plaintiffs are residents of New York, residing at 380 Grant Avenue, Copiague, New York 11726 (the "Property"). (Compl. ¶ 1, ECF No. 1.) Defendant MERSCORP is a Delaware corporation and the parent company of Mortgage Electronic Registration Systems, Inc. ("MERS"), also a Delaware corporation and a non-party to this case. (Declaration of Rachel G. Packer in Support of Defendants' Motion to Dismiss ("Packer Decl."), Exs. B, C, D, ECF No. 16.) Defendant PHM appears to be a California corporation.

On January 26, 2017, Plaintiffs executed a promissory note (the "Note") in favor of Associated Mortgage Bankers, Inc. ("Associated"), a non-party to this case, in the amount of $285,917.00. (Affidavit of Michael Fontaine in Support of Defendants' Motion to Dismiss ("Fontaine Aff."), Ex. A, ECF No. 16.) To secure the Note, Plaintiffs contemporaneously executed a mortgage on the Property (the "Mortgage," collectively with the Note, the "Loan"), which designated MERS as the "mortgagee of record" and "nominee for Lender and Lender's successors and assigns" on behalf of Associated. (Fontaine Aff., Ex. B at 1.) A clause in the Mortgage, initialed by Plaintiffs at the time of signing, provides:

> The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales. The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There may also be one or more changes of the Loan Servicer unrelated to the sale of the Note.

(<u>Id.</u> at Ex. B, p. 8 ¶ 19.) It appears that on February 16, 2017, the Loan, or at least the servicing rights to the Loan, were transferred from Associated to PHM. (Fontaine Aff. ¶ 12; Compl., Ex. B

2

at 11.) Defendant MERSCORP has no current interest in the Loan, nor has it ever held any interest in the Loan. (Packer Decl. ¶ 8.) As of October 9, 2017, the Loan was current, not in default, and not the subject of any pending or anticipated foreclosure action. (Fontaine Aff. ¶ 14.)

On or about February 8, 2017, Plaintiffs sent a "Qualified Written Request" ("QWR") to Associated that vaguely alleged "potential fraudulent and deceptive practices by unscrupulous mortgage brokers[,] sales and transfers of mortgage servicing rights," and "deceptive, abusive and fraudulent accounting tricks and practices." (Compl., Ex. B at 2.) In the QWR, Plaintiffs also disputed the Loan's validity, requested that Associated conduct an internal investigation to "validate" the Loan, and requested various accounting details and records to allow Plaintiffs to "independently validate" their debt. (Id. at 3.) On March 10, 2017, counsel for Associated responded to the QWR in a letter denying Plaintiffs' allegations and explaining that Plaintiffs could not have suffered any injury relating to the servicing of the Loan because there had not yet been any servicing of the Loan due to the fact that the Loan had only been funded nine days prior to Plaintiffs sending the QWR. (Id. at 9.) The QWR Response also included specific accounting details in response to Plaintiffs' inquiries. (Id. at 10.)

### B. Procedural History

On July 17, 2017, Plaintiffs commenced this action against MERSCORP and PHM. The specific claims alleged against MERSCORP and PHM are unclear. In the Complaint, Plaintiffs assert a number of grievances against Associated and MERS, neither of which were named as defendants in this case. For example, Plaintiffs allege that a "break in the chain of assignment exists because MERS is not an authorized assignee,. Making [sic] the corporate assignment of [the] mortgage in 2011 impossible . . ." and dispute MERS' validity as a mortgage assignee in general. (Compl. at ¶ 8.) Further, Plaintiffs allege, in reference to MERS, that "[t]he said

3

unscrupulous entities have colluded . . . by filing fraudulent documents into the land records as evidence of a purported debt" and dispute the sufficiency of information Associated provided in the QWR Response. (Id. at ¶ 13.) Plaintiffs also allege that Associated did not follow "protocol" in maintaining origination documents and that Associated "is not the holder of the loan because there has been a break in the chain of title . . . ." (Compl. ¶ 4, 5.) As a result, Plaintiffs claim that they "no longer owe any money on the loan . . . ." (Id. at ¶ 5.)

Plaintiffs also appear to conflate the Mortgage executed in favor of Associated in 2017 with a separate 2011 mortgage (the "2011 Mortgage") that plaintiff Lydia Matson and another individual, who is not a party to this case, executed in favor of Continental Home Loans, Inc. ("Continental"). (Id. at ¶ 8.) Plaintiffs attach the 2011 Mortgage as "Exhibit C" to their Complaint. Neither of the Defendants in this case nor Associated had any involvement in the origination or servicing of the 2011 Mortgage. (Fontaine Aff. ¶ 15.) As a remedy for these alleged harms, Plaintiffs seek "to quiet title," (Compl. ¶ 15), which, if successful, would release Plaintiffs from their obligation to pay the premiums for the Mortgage.

On December 4, 2017, Defendants filed their motion to dismiss. (See ECF No. 16.)

## II.    DISCUSSION

### A. Legal Standards

#### 1. *Pro Se* Pleading Standard

It is well established that *pro se* pleadings "must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, "the Court 'need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not

4

exist . . . .'" Ogunmokun v. Am. Educ. Servs., No. 12-CV-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting Molina v. New York, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

### 2. Fed. R. Civ. P. 12(b)(1)

A case must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "[T]he threshold question in every federal case, determining the power of the court to entertain the suit" is "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III.'" Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Plaintiffs lack standing where they fail to "allege, and ultimately prove, that [they have] suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003) (citing Bennett v. Spear, 520 U.S. 154, 162 (1997)).

In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp., 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001) (citing Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d 196, 198 (2d Cir. 1992)). However, when resolving such motions, the court "may refer to evidence outside the pleadings" such as affidavits and other documents. Makarova, 201 F.3d at 113; see also Harrison v. New York, 95 F. Supp. 3d 293, 311 (E.D.N.Y. 2015) (same).

### B. Application

Plaintiffs lack constitutional standing to pursue this action because they fail to allege a

5

sufficient injury-in-fact. Plaintiffs fail to allege any specific wrongdoing by either defendant or any controversy regarding the Loan itself. Instead, the Complaint contains largely irrelevant information and conclusory allegations against MERS, which is not named as a defendant in this action.

First, MERS is a subsidiary of MERSCORP—separate and distinct from its parent company. It is axiomatic that parent companies are not liable for the acts of their subsidiaries unless the corporate veil is pierced. See New York State Elec. & Gas Corp. v. FirstEnergy Corp., 766 F.3d 212, 228 (2d Cir. 2014) (holding that veil piercing is limited to situations in which the parent company controls the subsidiary and uses that control to commit a fraud or another wrong that caused the plaintiff's loss). Plaintiffs fail to allege any facts or advance any arguments indicating that it would be appropriate to pierce the veil in this case. Accordingly, Plaintiffs have failed to allege an injury-in-fact that is traceable to the actions of MERSCORP and which is likely to be redressed by the relief requested.

Second, Plaintiffs also fail to allege any injury resulting from PHM's actions. Plaintiffs do not contest that the Loan is current, not in default, and not the subject of any pending or anticipated foreclosure action. (Fontaine Aff. ¶ 14.) Additionally, Plaintiffs cannot establish any harm resulting from the assignment of the Mortgage to PHM. There is no indication that the assignment had any effect on Plaintiffs' underlying debt, their obligations under the Loan, or that it otherwise altered the terms of the Loan in any way. The only conceivable impact this transfer had on Plaintiffs is that there has been a change in the entity to whom they direct their monthly premium payments. Furthermore, Plaintiffs explicitly acknowledged and agreed to a provision in the Mortgage which states that the servicing rights, the Loan itself, or both, may be assigned without any prior notice to Plaintiffs. (Fontaine Aff., Ex. B ¶ 19.)

Lastly, as non-parties to the assignment, Plaintiffs lack standing to challenge its validity. See Boco v. Argent Mortg. Co., LLC, No. 13-CV-1165, 2014 WL 1312101, at *3 (E.D.N.Y. Mar. 31, 2014) (holding that plaintiff lacked standing to challenge an assignment of her mortgage); Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379, 387 (E.D.N.Y. 2014) (same); Pollak v. Bank of Am., No. 12-CV-7726, 2013 WL 4799264, at *3 (S.D.N.Y. Aug. 27, 2013) ("In any event, the question of *who* owns plaintiff's Mortgage is irrelevant for purposes of this case, as plaintiff admits he obtained two loans from Countrywide to purchase the Property.  Common sense dictates that the mere fact there may be a dispute as to which entity has legal ownership of the Mortgage does not obviate plaintiff's contractual obligation to repay the loans.") (emphasis in original); Karamath v. U.S. Bank, N.A., No. 11-CV-1557, 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012) (report and recommendation), adopted by 2012 WL 4327502 (E.D.N.Y. Sept. 20, 2012) ("[P]laintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no standing to challenge the validity of that agreement or the assignment.").

Accordingly, all of Plaintiffs' claims are dismissed without prejudice for lack of subject matter jurisdiction.

### C. Leave to Amend

Although, generally, leave to amend should be freely given, see Fed. R. Civ. P. 15(a), it is well settled that "leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); see also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead[,]" even by a *pro se* litigant, "should be denied").  An amendment is "futile if the proposed pleading would not withstand a motion to dismiss." Jones v. Phelps Corp., No. 14-CV-84, 2014 WL 2195944, at *3 (N.D.N.Y. May 22,

2014). Given that Plaintiffs cannot establish that they have suffered an injury-in-fact, an amended complaint could not survive a motion to dismiss. Therefore, the Court concludes that granting leave to amend the Complaint would be futile. Additionally, Plaintiffs have not requested leave to amend the Complaint and therefore, there is no indication as to how an amendment would cure the defects in the Complaint. "As a result, the Court has no inkling of what their amendment might look like or what additional facts may entitle them to relief." In re SAIC Inc. Derivative Litig., 948 F. Supp. 2d 366, 392 (S.D.N.Y. 2013), aff'd sub nom. Welch v. Havenstein, 553 F. App'x 54 (2d Cir. 2014) (internal quotation marks and citation omitted).

### III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to close this case and to send a copy of this Order to the *pro se* Plaintiffs.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Date: July 17, 2018 /s/ (JMA)
Central Islip, New York JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE